Hart L. Robinovitch (AZ SBN 020910)
**ZIMMERMAN REED LLP**
14646 North Kierland Blvd., Suite 145
Scottsdale, AZ  85254
Telephone: (480) 348-6400
Facsimile: (480) 348-6415
Email: hart.robinovitch@zimmreed.com

*Attorneys for Plaintiffs and the Class*

*(Additional Counsel listed below)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Panda Accounting LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>Academy Bank, N.A.; JP Morgan Chase Bank, N.A. d/b/a Chase Bank; and, MidFirst Bank,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Panda Accounting LLC ("Plaintiff" or "Panda Accounting") brings this class action complaint on behalf of themselves and those similarly situated against Defendants Academy Bank, N.A., JPMorgan Chase Bank, N.A., and MidFirst Bank (hereinafter "Defendants") to obtain fees owed to Plaintiff as a result of its work as an agent to obtain loans on behalf of clients through the Paycheck Protection Program ("PPP"), a federal program implemented to provide small businesses with loans for assistance related to losses due to Covid-19 and state government shut down orders. Federal regulations require Defendants to pay Plaintiff and the proposed Class for their work as agents that facilitate loans between Defendants and small businesses. Nevertheless, Defendants have refused to pay Plaintiff and Class members and instead have kept the fees for themselves.  Plaintiff alleges the following based upon its knowledge and upon information and belief, including investigations conducted by its attorneys.

## I.  PARTIES

1.      **Plaintiff** Panda Accounting LLC is an Arizona limited liability company organized and authorized to do business and doing business in the State of Arizona.  Its principle place of business is in Maricopa County, Arizona.  Panda Accounting specializes in accounting and related consulting services, including outsourced bookkeeping, payroll processing, and tax preparation services for individuals and small businesses.  Plaintiff assisted its clients with securing PPP loans from Defendants, but Defendants have refused to pay Plaintiff any fees for their work in securing the PPP loans.

2.      **Defendant** Academy Bank, N.A. ("Academy Bank") is a full-service community bank with over $1 billion in assets and a corporate headquarters located at 8551 N. Boardwalk Ave, Kansas City, MO 64154.  Academy Bank conducts substantial business in this district.  Plaintiff secured PPP loans for two clients from Academy Bank amounting to nearly $50,000.  Academy Bank informed Plaintiff that it would not be paying any agent fees related to PPP loans.

//

3.      **Defendant** JPMorgan Chase Bank, N.A. ("Chase Bank") is a federally chartered bank with a headquarters located at 270 Park Ave., New York, NY, 10017. Chase Bank conducts substantial business in this district.  Plaintiff secured PPP loans for four clients from Chase Bank totaling over $230,000.  Chase has not paid Plaintiff any agent fees related to the PPP loans.

4.      **Defendant** MidFirst Bank is one of the largest privately owned banks in the United States and is headquartered at 501 NW Grand Blvd., Oklahoma City, OK, 73118.  MidFirst Bank conducts substantial business in this district.  Plaintiff secured PPP loans for two clients from MidFirst Bank totaling approximately $75,000.00. MidFirst Bank has not paid Plaintiff any agent fees related to the PPP loan and has claimed it has no obligation to pay agent fees because it did not engage Plaintiff as an agent.

## II. <u>JURISDICTION AND VENUE</u>

5.      The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

6.      This Court has personal jurisdiction over Defendants because Defendants do business in this District, and a substantial number of the events giving rise to the claims alleged herein took place in Arizona.

7.      The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff's principle place of business is located in this District, and a substantial part of the events or omissions giving rise to the alleged claims occurred in this District because Plaintiff, on behalf of its clients, applied for the PPP loans while in this District and Defendants, marketed, promoted, and took applications for the PPP loans in this District.

/ /

### III.   FACTUAL ALLEGATIONS

#### Background

8.      On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus, known as COVID-19.

9.      On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

10.     On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

11.     On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

12.     The Trump Administration expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus." *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 13 CFR Part 120, Interim Final Rule (the "SBA PPP Final Rule").

13.     In March, Arizona Governor Douglas A. Ducey issued an executive Stay Home, Stay Healthy, Stay Connected initiative that went into effect on March 31, 2020 and required Arizona residents to limit their time away from their place of residence expect for limited essential activities and for employment in essential businesses.

14.     On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136).  The CARES Act was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020.  This legislation included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered

by the United States Department of Treasury ("Treasury") and its Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses.

15.     As part of the CARES Act, the Federal Government created a $349 billion loan program, referred to as the Paycheck Protection Program or PPP.  The PPP provides small businesses with loans to be originated from February 15, 2020, through June 30, 2020.  The PPP was created to provide American small businesses with eight weeks of cash-flow assistance and to allow a certain percentage of the loan to be forgivable if the loan is utilized to retain employees and fund payrolls.  The SBA backs the loans.  The loans are administered by Treasury and backed by the Federal Government but are funded by private lenders ("Lenders"), including banks and financial services firms that review and approve PPP loan applications.

16.     The Treasury announced on April 3, 2020 that small businesses and sole proprietors could apply and receive loans to cover their payroll and other expenses through approved SBA Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.[1]

17.     On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA").  The PPPEA added $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

18.     The Treasury's Paycheck Protect Program (PPP) Information Sheet for Lenders[2] (the "PPP ISL"), consistent with the SBA PPP Final Rule (collectively, the "SBA Regulations"), describes a system to distribute the PPP loans that relies on SBA Lenders – who review, approve, and finance loan applicants – and independent agents

---

[1]  *Paycheck Protection Program (PPP) Information Sheet: Borrowers*, Dep't of Treasury (last visited, May 15, 2020), *https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf*

[2]  *Paycheck Protection Program (PPP) Information Sheet: Lenders*, Dep't of Treasury (last visited, May 15, 2020), https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf?

("PPP Agents") – who provide small businesses with assistance applying for and obtaining PPP Loans.

19.     Under the SBA Regulations, a PPP Agent may be any of the following:

- An attorney;

- An accountant;

- A consultant;

- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

- A loan broker; or,

- Any other individual or entity representing an applicant by conducting business with the SBA."[3]

20.     The SBA Regulations expressly contemplate and encourage PPP Agents to assist small businesses with their PPP Loan applications.  The SBA Regulations allow for and set standards by which PPP Agents are to be paid for their work.  Specifically, the regulations require that PPP Agents be paid from a portion of the set fees provided to SBA Lenders for processing the PPP Loan.

21.     Under the SBA Regulations, Lenders are compensated for processing fees ("Lender Fees") based on the amount the financing at the time of final disbursement.  The SBA pays Lenders Fees to SBA Lenders who process PPP loans in the following amounts:

- Five percent (5%) for loans of not more than $350,000;

- Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and

- One percent (1%) for loans of at least $2,000,000.[4]

[3] *Id.*
[4] *Id.*

5

22.     Concerning PPP Agents' fees, the SBA Regulations provide that "Agent fees **will** be paid out of lender fees. The lender **will** pay the agent. ***Agents may not collect any fees from the applicant***. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP"[5] loan is as follows (the "Agent Fees"):

- One percent (1%) for loans of not more than $350,000;
- 0.50% for loans of more than $350,000 and less than $2 million; and,
- 0.25% for loans of at least $2 million.

23.     The SBA Regulations and Treasury Guidance determined that the PPP Agent Fees set forth above are reasonable given the PPP Agents efforts in providing small businesses with PPP Loan applications and meeting all requirements to receive PPP Loans, and given the fees that Lenders receive for processing PPP loans.

24.     By assisting businesses in obtaining PPP funding, PPP Agents play a significant role in promoting the interests of the CARES Act and ensuring its implementation conforms to the United States Congress's legislative intent.  Indeed, the Senate directed the Treasury to "issue guidance to lenders and agents to ensure that the … loans ***prioritize small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years***."[6] (Emphasis added).  PPP Agents help ensure small businesses take advantage of the available PPP Loans.

25.     Here, the Defendants are SBA Lenders. Plaintiff served as the PPP Agent for small businesses applying for the PPP loans provided by the Defendants and backed by the full faith and credit of the Federal Government.

---

[5] *Id. (Emphasis added)*
[6] *CARES ACT, PL 116-136, March 27, 2020, 134 Stat 281*

26.     Despite Plaintiff's important (and successful) work in preparing PPP Loans for its clients, Defendant has not provided Plaintiff with any regulatorily required Agent Fees, but has instead retained the full amount of the Lender Fees for itself.

27.     Plaintiff has no other means of obtaining payment for the services it provided to its clients in securing their PPP Loans.  The SBA Regulations specifically prohibit PPP Agents from obtaining payment of any fees from the loan applicants (i.e. Plaintiff's clients).  The SBA Regulations require Plaintiff to be paid *only* by the SBA Lender through payment of a portion of the Lender Fees.

28.     Apart from Plaintiff's clients, Defendants received approval from the SBA and funded loans for other businesses.  However, upon information and belief, Defendants failed to pay the required compensation to members of the proposed Class that served as PPP Agents for other PPP loans as well.

29.     Defendants have either failed and refused to pay or are willing to pay only a partial percentage of the monies owed to Plaintiff and the Class.

### *Plaintiff Assisted its Clients with Applying for PPP Loans Under the CARES ACT*

30.     On or about March 25, 2020, Plaintiff became aware that the CARES Act had been signed into law.  Plaintiff, knowing that the COVID-19 crisis would significantly impact its clients' businesses, sought to obtain PPP loans through various SBA-approved lenders on behalf of its clients.

31.     Plaintiff spent considerable time familiarizing itself with the Act, and the related SBA Regulations, and in particular, (a) Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP; and, (b) Section 1106 of the Act, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

32.     In or about April 2020, Plaintiff assisted its clients in the gathering and analyzing of relevant business documents, as well as the calculation and preparation of loan applications.

33.    Based on the SBA Regulations, Plaintiff understood that it was not allowed to charge its clients a fee relating to the application process but that it was only permitted to receive compensation from the Agents' share of the $20 billion in fees the Federal Government paid the SBA Lenders for facilitating PPP loans.

34.    Plaintiff spent between two (2) and ten (10) hours on each application, depending on the complexity of the client and the amount of available data.

35.    To fill out the Applications, Plaintiff assisted clients in gathering the required information and filling out the applications, including the following documents, where applicable or necessary:

    a.   Loan Calculator Spreadsheet;

    b.   SBA Form 2483 – Each Owner 20% or more or Officer;

    c.   Addendum A: Affiliates – Each Owner 20% or more must complete;

    d.   Information if the applicant received an SBA Economic Injury Disaster Loan ("EIDL");

    e.   Certificate of Beneficial Ownership Interest – Each Owner 20% or more must complete;

    f.   Driver's License for each 20% or more owner;

    g.   Articles of Incorporation or Articles of Organization;

    h.   2019 IRS/State Payroll Forms:  940 or all four quarterly 941;

    i.   2019 Payroll Summary Report by Employee;

    j.   2019 Health Insurance Premium Paid – Each monthly statement or year-end summary;

    k.   2019 Retirement Matching Plan Paid – Each monthly statement or year-end summary;

    l.   2020 1st QTR 941 Form;

    m.  January 2020 Payroll Summary by Employee;

    n.   February 2020 Payroll Summary by Employee;

    o.   March 2020 Payroll Summary by Employee;

p.  Health Insurance Premium Paid – January, February, and March 2020;

q.  Retirement Matching Plan Paid – January, February, and March 2020;

r.  Wiring Instruction; and,

s.  Copy of most recent bank statement (collectively, (a) – (s) above are part of the "Application").

36.    Plaintiff believed in good faith that it would receive the Agent Fees from the Lenders upon funding of each of their clients' loans under the PPP, as required by the SBA Regulations.

37.    Defendants did not comply with the SBA Regulations because they did not pay Plaintiff any agent fees despite awarding PPP loans to Plaintiff's clients for whom Plaintiff acted as a PPP Agent.  Instead, Defendants retained all of the Lender Fees.

38.    Defendants, as lenders under the PPP, lack any legal authority under the SBA Regulations to withhold payment of the Agent Fees to Plaintiff.

39.    As a result of Defendants' unlawful actions, Plaintiff and the Class have suffered financial harm by being deprived of the statutorily mandated compensation for the professional services that they provided in connection with assisting their clients in applying for and obtaining PPP loans.  Defendants barred Plaintiff from receiving compensation for their role as Agents in the PPP process that resulted in significant benefits to both small businesses and the lenders, as is the intent of the PPP.

## IV. CLASS ALLEGATIONS

40.    Plaintiff brings this action on behalf of themselves and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Nationwide Class:

> All PPP Agents who assisted a business in obtaining a PPP loan pursuant to the CARES Act and its progeny.

41.    For purposes of the Class definition, the term "Agent" has the same meaning as an "agent" under the SBA Regulations.

/ /

42.   Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

43.   *Numerosity:* The Class is composed of thousands of Agents (the "Class Members"), whose joinder in this action would be impracticable.  The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

44.   *Commonality:* Common questions of law and fact affect the Class.  These questions of law and fact predominate over individual questions affecting individual Class Members and, include, but are not limited to, the following:

    a.  Whether Defendant was obligated to pay Plaintiff and the Class Agent Fees from the Lender Fees it received under the CARES Act;

    b.  Whether Defendants complied with their legal obligations under the terms of the CARES Act as a lender of the PPP funds;

    c.  Whether Defendants have a policy and/or practice of failing to compensate Agents who facilitated PPP loans to the detriment of the Class;

    d.  Whether Defendants prioritized their origination own fees over abiding by the CARES Act and PPP specifications;

    e.  Whether Defendants possessed exclusive knowledge of material facts, with respect to the Application process, i.e., that the Agents were not receiving compensation when assisting applicants with PPP loan process;

    f.  Whether Defendants actively concealed a material fact or facts from the Plaintiff, namely, that they had no intention of paying Agents their earned fees pursuant to the CARES Act and its regulations;

    g.  Whether Defendants' conduct, as alleged herein, was intentional and knowing;

    h.  Whether Class Members are entitled to damages and/or restitution; and if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Class Members as a result of the conduct alleged herein;

    i.  Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying

Agents their earned fees under the CARES Act;

j.  Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit;

k.  Whether Defendant was unjustly enriched by its practice of refusing to pay Agent Fees; and,

l.  Whether Defendants established a quasi-contract with Plaintiff and the Class because Defendants engaged in PPP loans pursuant to the Cares Act and benefited from the services provided by Plaintiff and the Class, who had a reasonable expectation of payment.

45.  *Superiority*: In engaging in the conduct described herein, Defendants have acted and failed to act on grounds generally applicable to Plaintiff and other Class members.  A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class members' claims.  Few, if any, Class members could afford to seek legal redress of the wrongs complained herein on an individual basis.  Absent class action, Class members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the proceeds of their misdeeds.

46.  *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class members.  Plaintiff and the Class members have all been injured by Defendants' unfair and unlawful PPP loan application and funding practices, as alleged herein.  The factual and legal basis of Defendants' liability to Plaintiff and each Class member as a result of Defendants' actions are described herein.

47.  *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interests of the other Class members that Plaintiff seeks to represent.  Plaintiff will fairly and adequately represent and protect the interests of the other Class members.  Plaintiff has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions.  Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so.  Neither Plaintiff nor counsel have any interest adverse to other Class members.

11

48.    Plaintiff is informed and believes that Defendants keep extensive computerized records of their loan applications through, *inter alia*, computerized loan application systems, and Federally-mandated record-keeping practices.  Defendants have one or more databases through which all of the borrowers may be identified and ascertained, and it maintains contact information, including email and mailing addresses. From this information, the existence of the Class Members (i.e., the Agent for the borrower) can be determined, and thereafter, a notice of this action can be disseminated in accordance with due process requirements.

## V.  CAUSES OF ACTION

### COUNT I
### Declaratory Relief
### (On behalf of Plaintiff and the Class against all Defendants)

49.    Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

50.    Plaintiff assisted its clients with the application process.  Defendants failed to pay Agent Fees owed to Plaintiff as required by the SBA Regulations.  Instead, they kept all of the origination and processing fees for themselves, in direct violation of the SBA Regulations.

51.    An actual controversy has arisen between Plaintiff and Defendants as to the Agent Fees owed to Plaintiff by Defendants.  Through its conduct of refusing to pay Agent Fees, Defendants deny that any Agent Fees are owed to Plaintiff.

52.    Plaintiff and the Class Members seek a declaration in accordance with SBA Regulations that a portion of the Lender Fees paid to Defendants must be apportioned to Plaintiff and the Class.

/ / /

/ / /

/ / /

/ /

## COUNT II

### UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Class against all Defendants

53.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

54.     Plaintiff and members of the Class are PPP Agents who assisted small business in obtaining PPP Loans from Defendants.  Despite their efforts as PPP Agents, Defendants have refused to pay Plaintiff and members of the Class any Agent Fees as required by the SBA Regulations.

55.     Instead, Defendants have retained the full amount of the Lender Fees – from which the SBA Regulations require Agent Fees to be paid.  Therefore, Defendants have unfairly retained fees intended to benefit and compensate Plaintiff and the Class for their efforts in promoting the interests of the CARES Act and ensuring small businesses receive PPP Loans.

56.     Defendants have been, and continue to be unjustly enriched, to the detriment and at the expense of the Class members.

57.     Defendants have unjustly benefitted through the unlawful and wrongful collection of money from the Federal Government through the SBA funding PPP loan applications and continue to benefit to the detriment and at the expense of Plaintiff and Class members.

58.     If Defendants practice of retaining the full amount of Lender Fees despite the efforts of PPP Agents who, under the SBA Regulations, are entitled to a portion of the Lender Fees, then the purpose and intent of the CARES Act would be upset because PPP Agents would receive no due compensation for providing assistance to small businesses seeking a PPP Loan.  Plaintiff and the Class have no other means of obtaining compensation from their clients because the SBA Regulations specifically prohibit PPP Agents from receiving payment from any source other than the Lender Fees.

/ /

59.     Defendants' conduct willfully and intentionally negates terms of the SBA Regulations by unilaterally refusing to honor the regulatorily required Agent Fees. Defendants' actions render those terms superfluous and undermine the intent of Congress to promote small business loans under the PPP and CARES Act.

60.     Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff and the U.S. Government.

61.     Plaintiff and the Class were injured as a direct and proximate cause of Defendants' misconduct.   Therefore, Plaintiff seeks disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, an injunction preventing Defendants from continuing its unlawful conduct, and all other relief afforded under the law that this Court deems just and proper.

## COUNT III

### CONVERSION
### (On behalf of Plaintiff and the Class against all Defendants)

62.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

63.     Under the SBA Regulations, Plaintiff and the Class, as PPP Agents, have a right to Agent Fees that must be paid from the amount of Lender Fees provided to Defendants for processing Plaintiff's client's PPP Loan applications.

64.     The SBA Regulations state that "Agent fees *will* be paid out of lender fees" and provide guidelines on the amount of Agent Fees that should be paid to the PPP Agent, depending on the size of the PPP loan secured.

65.     Additionally, the SBA Regulations require that lenders, not loan recipients, pay the Agent fees.  The SBA Regulations states unequivocally that "Agents may not collect fees from the applicant."

66.     Plaintiff and the Class assisted clients with applying for PPP loans, including gathering and curating information necessary for completing PPP Loan

applications.   Due to Plaintiff's efforts, its clients were awarded PPP loans from Defendants.  As such, Plaintiff has a right to immediate possession of the Agent fees.

67.     Although Plaintiff is entitled to Agent fees under the SBA Regulations, Defendants have refused to provide any amount to Plaintiff, keeping the full amount of the Lender Fees.

68.     In Arizona, money may be the subject of a conversion claim if the money can be described, identified or segregated, and an obligation to treat it in a specific manner is established.  That requirement is met because the Agent Fees are a segregated portion of the Lender Fees awarded through the SBA Regulations for successful loan applicants.

69.     By withholding the Agent fees, Defendants have maintained wrongful control over Plaintiff's property inconsistent with Plaintiff's entitlements under the SBA Regulations.

70.     Defendants committed civil conversion by retaining monies owed to Plaintiff and Class members.

71.     Plaintiff and the Class have been injured as a direct and proximate cause of Defendant's misconduct.  Plaintiffs, as such, seek recovery from Defendants in the amount of the owed Agent Fees, and all other relief afforded under the law.

## COUNT IV

### BREACH OF AN IMPLIED CONTRACT
### (On behalf of Plaintiff and the Class against all Defendants)

72.     Plaintiff and the Class, as PPP Agents, conferred a benefit upon Defendants by gathering documents, performing work, and completing forms necessary for small businesses to apply for PPP loans.  Defendants received a portion of those loans as Lender Fees.

73.     In performing work to obtain PPP loans for small businesses, Plaintiff and the Class had a reasonable expectation of compensation.  That reasonable expectation stemmed from the SBA Regulations, which explicitly state PPP Agents will receive

Agent fees from the lenders.  Those Agent fees are payed out of a portion of the Lender Fees.

74.     Despite that reasonable expectation and the plain language of the SBA Regulations, Defendants have refused to pay Plaintiff and the Class any Agent Fees.

75.     Instead, Defendants have retained the full amount of the Lender Fees for themselves and thereby, benefited from the work performed by Plaintiff and the Class.

76.     It would be unjust to allow Defendants to retain the benefit of Plaintiff's and the Class's work in light of their reasonable expectation of payment for services rendered.

77.     Defendants, regardless of any intent of the parties, have a quasi-contractual obligation to pay for the services by which they benefited, and to compensate Plaintiff and the Class for the reasonable value of their services.

78.     Plaintiff and the Class have been injured as a direct and proximate cause of Defendant's misconduct.  Plaintiffs, as such, seek recovery from Defendants in the amount of the owed Agent Fees, and all other relief afforded under the law.

# COUNT V

**VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT, A.R.S. § 44-1522, et seq.**
**(On behalf of Plaintiff and the Class against all Defendants)**

79.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

80.     The Arizona Consumer Fraud Act prohibits the "act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby . . . ."  A.R.S. § 44-1522(A).

81.     Defendants have committed unfair acts and concealed and omitted material facts that have harmed Plaintiff and the Class.

82.     Specifically, Defendants, despite its obligations under the SBA Regulations, have refused to pay Plaintiff and the Class any amount of Agent Fees owed. Defendants' conduct constitutes an unfair act because Defendants received Lender Fees as a result of Plaintiff and the Class's efforts to apply for PPP Loans secured through Defendants, who are SBA Lenders.  Although Defendant benefited from that work, it refused to provide Plaintiff and the Class payment in the amount of the required Agent Fees, and instead retained the full value of the Lender Fees for themselves.

83.     Defendants also concealed and omitted material information, specifically, that despite accepting a loan from a PPP Agent submitted on behalf of a small business client, that Defendants would refuse to pay the required Agent Fees.  Had Plaintiff and the Class known that Defendants would refuse to pay Agent Fees, they would have taken their loans to other SBA Lenders who were willing to compensate PPP Agents consistent with the SBA Regulations.

84.     Defendants' unfair acts, concealments, and omissions occurred in connection with the sale or advertisement of services, namely, services related to the processing and financing of PPP Loans under the CARES Act and SBA Regulations.

85.     Defendant intended that Plaintiff and the Class rely on its concealments and omissions because, had it stated it would not pay Agent Fees as required under the SBA Regulations, Plaintiff and the Class would not have secured PPP Loans from Defendants for their clients.  By concealing and omitting their intention to not pay required Agent Fees, Defendants improperly secured business from Plaintiff and the Class for which Defendants were compensated through the Lender Fees.

86.     Defendants' unfair acts, concealments, and omissions harmed Plaintiff and the Class who were not properly compensated for their efforts in securing PPP Loans for their clients.  Plaintiff and the Class had no obligation to use Defendants as SBA Lenders for the purpose of obtaining PPP Loans for their clients.  Had Defendants stated their intention not to comply with the SBA Regulations and pay PPP Agents the Agent Fees, Plaintiff and the Class would have found SBA Lenders willing to pay Agent Fees.

87.     Plaintiff and the Class have been injured as a direct and proximate cause of Defendant's misconduct.  Plaintiffs, as such, seek recovery from Defendants in the amount of the owed Agent Fees, and all other relief afforded under the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a.   For an Order certifying the Class as defined above, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class counsel;

b.   For an Order declaring Defendants' actions to be unlawful;

c.   For a declaration in accordance with SBA guidance that approximately 19.14% of all administrative fees paid to all Defendants, should be deposited into a mutually agreeable fund or funds, within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan;

d.   For equitable relief to Plaintiff and Class members;

e.   For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and Class Members, and equitable relief including disgorgement, unjust enrichment, and all other available relief under applicable law;

f.   For an award of punitive damages pursuant to applicable law;

g.   For reasonable attorneys' fees and expenses as permitted by applicable statutes and law;

h.   For costs related to bringing this action;

i.   For pre- and post-judgment interest as allowed by law; and,

j.   Such further relief at law or in equity that this Court deems just and proper.

/ / /

/ / /

/ /

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, demand a trial by jury on all issues so triable.

Dated: May 19, 2020

Respectfully submitted,

**ZIMMERMAN REED LLP**


By: s/ Hart L. Robinovitch
Hart L. Robinovitch (AZ SBN 020910)
14646 North Kierland Blvd., Suite 145
Scottsdale, AZ  85254
Telephone: (480) 348-6400
Facsimile: (480) 348-6415
Email: hart.robinovitch@zimmreed.com

**ZIMMERMAN REED LLP**
Brian C. Gudmundson
(*pro hac vice to be filed*)
Michael Laird (*pro hac vice to be filed*)
1100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
Email: brian.gudmundson@zimmreed.com
Email: michael.laird@zimmreed.com

**ZUMPANO PATRICIOS & POPOK, PLLC**
Michael S. Popok, Esq.
(*pro hac vice to be filed*)
Mitchell G. Mandell, Esq.
(*pro hac vice to be filed*)
417 Fifth Avenue, Suite 826
New York, NY 10016
Telephone: (212) 381-9999
Facsimile: (212) 320-0332
Email: mpopok@zplaw.com
Email: mmandell@zplaw.com

**GERAGOS & GERAGOS, PC**
Mark Geragos, Esq.
(*pro hac vice to be filed*)
Ben Meiselas, Esq.
(*pro hac vice to be filed*)
644 South Figueroa Street

19

Los Angeles, California 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255
Email: mark@geragos.com
Email: ben@geragos.com

**GRAYLAW GROUP, INC.**
Michael E. Adler, Esq.
(*pro hac vice to be filed*)
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834
Email: meadler@graylawinc.com

**DHILLON LAW GROUP INC.**
Harmeet K. Dhillon, Esq.
(*pro hac vice to be filed*)
Nitoj P. Singh, Esq.
(*pro hac vice to be filed*)
177 Post St., Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
Email: harmeet@dhillonlaw.com
Email: nsingh@dhillonlaw.com

*Attorneys for Plaintiffs*